# EXHIBIT B



# Finance Agreement

**Box 1**
BORROWER: (Legal Name): West 86th Street Dentistry, P.C.

**Box 2**
ADDRESS: 2 West 86th St.

BUSINESS PHONE:

ADDRESS:

HOME PHONE: (201) 413-5309

CITY: New York    ST: NY    ZIP: 10024    COUNTY:

**Box 3**
TYPE OF ORGANIZATION: Professional Corporation

**Box 3 (con't)**
STATE OF ORGANIZATION: NJ

| Box 4 PRINCIPAL AMOUNT | Box 5 TERM | Box 6 MONTHLY PAYMENT | Box 7 ADVANCE PAYMENT |
|---|---|---|---|
| $250,000.00 | 120 (Months) | 4 payments @ $0.00<br>4 payments @ $500.00<br>4 payments @ $1,000.00<br>12 payments @ $1,172.00<br>12 payments @ $2,345.00<br>12 payments @ $3,517.00<br>72 payments @ $4,689.00 | $0.00 |

**ADDITIONAL PROVISIONS:**
A balloon payment equal to 10% of the Principal Amount is due and payable on the same date as the final payment under this Agreement.

**DESCRIPTION OF ASSET (S)** All assets now owned or hereafter acquired, including but not limited to, the dental practice located at 2 West 86th St. New York, NY 10024

Please initial  N·O

**DISCLAIMER:** No supplier, broker or salesperson is an agent of Lender or its assignee with respect to the Indebtedness, as defined herein, nor are they authorized to waive or alter the terms of this Agreement. Their representatives shall in no way affect Borrower's or Lender's rights and obligations as herein set forth. Borrower acknowledges that Borrower independently selected and determined the suitability of the Indebtedness for Borrower's intended use, without being advised by Lender. This Finance Agreement (this "Agreement") is the promissory note, security agreement and personal guaranty, all of which are to be construed together and are binding upon the parties hereto. This Agreement is prepayable after year 3 of its Term, subject to the terms and conditions herein contained. Borrower and any Guarantor have read and accepted all terms of this Agreement prior to signing it. This Agreement is being executed for business purposes and not for personal

Option 1 - Revised 04/02    Page 1 of 7    Please initial  



family, household or agricultural purposes. Time is of the essence in Borrower's and Guarantor's performance of their obligations hereunder and under all related instruments and documents executed and/or delivered pursuant hereto and any renewals or extensions thereof.

DEFINITIONS: As used in this Agreement, the capitalized terms set forth below shall have the following meanings: (a) *"Acceptance Date"* means the date set forth in box 9; (b) *"Borrower"* means the individual or entity whose name appears in box 1, and its successors and assigns; (c) *"Collateral"* means all personal property of Borrower wherever located, and whether now owned or hereafter acquired, including without limitation: (i) Accounts, including health-care insurance receivables; (ii) Chattel Paper; (iii) Inventory; (iv) Equipment; (v) Instruments; (vi) Investment Property; (vii) Documents, including patient lists, records and files; (viii) Deposit Accounts; (ix) General Intangibles, including patient lists, records and files; (x) Supporting Obligations; (xi) the assets described in the Description of Asset(s) text box above; and (xii) to the extent not listed above as original Collateral, proceeds and products of the foregoing, including but not limited to, payments from insurance claims for the loss, damage or destruction of any of the Collateral. Any term used in the UCC and not defined in this Agreement has the meaning given to the term in the UCC, as the same may be amended from time to time; (d) *"Contract Balance"* means the sum total of all Monthly Payments of principal and interest due over the Term; (e) *"Default Rate"* means the lesser of (i) 5 percentage points above the Effective Rate; or (ii) the maximum rate of interest permitted by applicable state law; (f) *"Effective Rate"* means the fixed rate of interest that is sufficient to fully amortize the Principal Amount less the balloon payment set forth in the Additional Provisions text box above, if any, borrowed over the Term at the Monthly Payment; (g) *"Guarantor"* means, collectively, jointly and severally, the individual or individuals whose names appear in box 8, or on any other guaranty agreement related to this Agreement; (h) *"Indebtedness"* means the Principal Amount plus all interest, fees and expenses due or to become due Lender pursuant to the terms hereof and also any and all other liabilities of Borrower to Lender or any affiliate of Lender, whether now existing or hereafter arising, absolute or contingent, due or to become due, including all interest, fees and expenses incurred in connection therewith; (i) *"Lender"* means Sky Bank, an Ohio banking corporation, and its successors and assigns; (j) *"Maturity Date"* means the final day of the Term; (k) *"Monthly Payment"* means the amount set forth in box 6 above; (l) *"Payment Date"* means the day of the month scheduled by Lender for the Monthly Payment; (m) *"Principal Amount"* means the amount set forth in box 4 above; (n) *"Security"* means all guaranties of any Indebtedness, all interests of Lender in the Collateral and all other agreements, rights, or interests insuring or guaranteeing payment of any Indebtedness or giving the Indebtedness priority over the repayment or performance of other obligations of Borrower; (o) *"Term"* means the period from the Acceptance Date until the Maturity Date; and (p) *"UCC"* means the Uniform Commercial Code, as the same may be amended from time to time.

PROMISSORY NOTE: 1. Loan. Subject to the terms and conditions set forth herein, Lender shall loan to Borrower the Contract Balance. Borrower, for value received, promises to pay the Indebtedness to the order of Lender in accordance with the terms of this Agreement.

2. Conditions Precedent to Loan. The obligation of Lender to advance the Principal Amount is subject to all of the conditions and requirements of this Agreement and delivery of the following required documents or other action, all of which are conditions precedent (a) upon the request of Lender, if Borrower is a corporation, a certified resolution of Borrower's Board of Directors duly authorizing the execution, delivery and performance of all of the documents required hereunder, or, if Borrower is a partnership or a limited liability company, resolutions of Borrower's partners or members, as applicable, duly authorizing the execution, delivery and performance of all of the documents required hereunder, (b) UCC financing statements duly executed on Borrower's behalf, if required, (c) upon Lender's request, the execution and delivery of such other instruments, documents, agreements or guaranties as Lender may deem necessary or appropriate to consummate or implement the transactions contemplated hereby; (d) completion or fulfillment of any conditions listed in the Additional Provisions text box above; (e) Borrower shall have taken such other action as Lender may reasonably require to perfect its security interest in the Collateral and shall have paid all costs incident thereto; and (f) completion and fulfillment by Borrower of all terms, provisions, and conditions of the Credit Conditions and Funding Requirements issued by Lender to Borrower.

3. Interest. Interest will be charged at the Effective Rate on all unpaid Indebtedness, except that Borrower shall pay interest at a rate equal to the Default Rate on any Indebtedness not paid when due and on any judgment obtained by Lender against Borrower or Guarantor pursuant to this Agreement. The amount of interest to be paid by the Borrower is equal to the difference between the sum of all Monthly Payments and the Principal Amount. Borrower agrees to pay Lender interest at the Effective Rate on the Principal Amount from the Acceptance Date to the first Payment Date.

4. Scheduled Payments. The Contract Balance, plus all unpaid accrued interest, fees and other charges permitted in this Agreement, shall be due and payable in full on the Maturity Date. Until the Maturity Date, Borrower shall make Monthly Payments to Lender on or before each Payment Date during the Term. All such sums due and payable by Borrower to Lender shall be applied first to reduce the then outstanding Contract Balance, and second, to any outstanding fees, charges, and expenses permitted under this Agreement. Any payment received in advance of the Acceptance Date will be applied to the last payment due under this Agreement. Borrower shall make all scheduled payments to Lender at such address as Lender may designate in writing from time to time.

Lender can accept late or partial payments, as well as payments marked "paid in full" or with other restrictive endorsements, without losing any of its rights under this Agreement. Any payment of a smaller sum than due, and/or any partial payment intended as a payment in full of a disputed amount under the Indebtedness, regardless of any endorsement restriction, will not constitute an accord and satisfaction, and must be sent to: Sky Financial Solutions, Inc., 2740 Airport Drive, Suite 300, Columbus, Ohio 43219-2286, Attention: Customer Service Manager. Any communication with Lender concerning the Borrower's dispute of any amounts due under the Indebtedness, as well as any payments of less than the full amount due and payable hereunder, must be sent to the address set forth in the preceding sentence. All other payments the Borrower makes towards the Indebtedness are to be mailed to the address the Lender sets forth on the Borrower's monthly billing statement.



5. **Payment Adjustments.** Borrower hereby authorizes Lender to adjust the Monthly Payment proportionately upward or downward if the Principal Amount changes after the Acceptance Date. Lender shall notify Borrower in writing of any such adjustment.

6. **Waiver of Presentment, etc.** Borrower hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest, notice of protest and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Agreement or any payment made pursuant to its terms.

7. **Unconditional Obligation.** Borrower agrees that its obligation to make payments to Lender hereunder is absolute and unconditional, under all circumstances whatsoever, and shall not be affected by any defect in the condition, design or operation of the Collateral, any lack of maintenance or service of any Collateral, or any setoff, counterclaim, defense or reduction which Borrower may have against Lender, or any supplier, servicer, broker, salesperson or other third party.

8. **Set-Up Fee.** Borrower agrees to pay Lender a standard set-up fee of up to 1.75% of the Principal Amount, as compensation for Lender's costs in connection with approval and documentation of the Indebtedness.

**SECURITY AGREEMENT:** 1. **Security Interest.** Borrower grants Lender a security interest in the Collateral and the proceeds of the Collateral to secure payment and performance of the Indebtedness.

2. **Representations, Warranties and Covenants.** Borrower and any Guarantor, when applicable, represent, warrant, covenant and agree that: (a) the Collateral shall be kept at the location specified in box 2 above, Borrower shall promptly notify Lender of any change in the location of the Collateral, and Borrower shall not remove the Collateral from said location without the prior written consent of Lender, except for Inventory sold in the ordinary course of business; (b) the chief executive office and state of organization of Borrower are as set forth in boxes 2 and 3 above; and Borrower shall not relocate its chief executive office or change its state of organization without providing Lender with 30 days prior written notice; (c) except for the security interest granted hereby, and except as otherwise disclosed in writing to Lender, Borrower is the owner of the Collateral, free from any prior lien, security interest or encumbrance, and Borrower will defend the Collateral against all claims and demands of any and all persons at any time claiming the Collateral or any interest therein; (d) except for sales of Inventory in the ordinary course of business, Borrower will not sell, exchange, lease or otherwise dispose of any interest in the Collateral without the prior written consent of Lender and shall not, without the consent of Lender, permit any lien, security interest or encumbrance to attach to the Collateral; (e) Borrower authorizes Lender to file a financing statement describing the Collateral and, if Lender has pre-filed a financing statement with respect thereto, Borrower hereby ratifies such filing. Borrower hereby waives any right that Borrower may have to file with the applicable filing officer any financing statement, amendment, termination or other record pertaining to the Collateral and/or Lender's interest therein. Borrower will cooperate with Lender in obtaining control of any Collateral in which a security interest may be perfected by possession or control and will, at Borrower's expense, make and do all such acts and things as Lender may from time to time request for the better evidencing, perfection, protection or validation of or realization of the benefits of, its security interest. At the request of Lender, Borrower shall join with Lender in executing one or more financing statements, or amendments thereto, for the Collateral pursuant to the requirements of the UCC, in form satisfactory to Lender. A carbon, photographic or other reproduction of this Agreement or a financing statement will be sufficient as a financing statement. Borrower hereby appoints Lender or its designee, with full power of substitution, as Borrower's attorney-in-fact to execute UCC financing statements in Borrower's name and to perform all other acts that Lender deems necessary or appropriate to perfect and protect Lender's security interest in the Collateral. Such appointment is coupled with an interest with full power of substitution, and is irrevocable.

3. **Maintenance, Insurance, and Taxes.** Borrower shall maintain the Collateral in good condition and repair. Borrower shall, at Borrower's expense, maintain insurance on the Collateral against fire, theft, and such other hazards and in such form and amount as Lender may require. The amount of such insurance shall be not less than the greater of (a) the fair market value of the Collateral, or (b) the aggregate amount of outstanding Indebtedness. Lender shall be named as an additional insured and/or as loss payee on all policies of insurance required hereunder. The proceeds of such insurance shall be applied, at Lender's sole election, toward the replacement or repair of the Collateral or to reduce Borrower's then outstanding Indebtedness. Borrower hereby appoints Lender as Borrower's attorney-in-fact to make any claim for, receive payment of, or execute or endorse all documents, checks or drafts for loss or damage or return of premium under such insurance. Each insurance policy shall provide that the insurance policy cannot be cancelled without 30 days' prior written notice to Lender. Borrower agrees to furnish to Lender proof of each insurance policy insuring the Collateral by providing to Lender a copy of the certificate of insurance or the policy itself within 10 days following the date hereof. Lender shall have the right, but not the obligation, to purchase insurance on the Collateral in such amounts, from such insurers and for such premiums, as Lender may deem appropriate. Borrower agrees to promptly reimburse Lender for all costs incurred in connection with obtaining such insurance plus an administrative fee of $25.00 each month until Borrower provides evidence of such insurance. Payment of such fee does not relieve Borrower from its obligation to obtain insurance. Borrower shall pay and discharge when due all taxes imposed on the Collateral. Further, Lender may discharge taxes, liens or other encumbrances at any time levied or placed on the Collateral and pay for the maintenance and preservation of the Collateral should Borrower fail to do so. Borrower agrees to promptly reimburse Lender on demand for any payment so made, and until such reimbursement, the amount so paid by Lender shall be added to the Principal Amount of the Indebtedness.

**UNCONDITIONAL GUARANTY.** 1. **Guaranty.** Each Guarantor absolutely, unconditionally, jointly and severally guarantees the prompt payment when due of all Indebtedness. If Borrower fails to pay all or any part of any Indebtedness when due, Guarantor shall immediately pay to Lender the outstanding balance of all Indebtedness, regardless of whether or not Lender first pursues Borrower or exhausts any of its rights or remedies against Borrower or other Security. If Guarantor consists of more than one individual or entity, each Guarantor shall be jointly and severally liable to Lender with respect to all guaranteed obligations, including, without limitation, the Indebtedness.



2. **Inducement to Lender.** Each Guarantor (a) acknowledges that Lender would not have extended any credit, including credit evidenced by the Indebtedness, to Borrower but for the guaranty; (b) represents and warrants that Guarantor has given it's guaranty to induce Lender to extend and to continue to extend credit to Borrower hereunder; (c) agrees that Lender may rely on the guaranty in extending future credit to Borrower; and (d) represents and warrants that each Guarantor has received good and valuable consideration for the guaranty; (e) waives acceptance of the guaranty; (f) represents and warrants that Guarantor has not given the guaranty in reliance upon the existence of any Security; (g) acknowledges receipt of notice of all Indebtedness existing before this date; (h) waives notice of any increases in the Indebtedness incurred after this date; and (i) waives protest and all other notices of failure to pay the Indebtedness or to perform any agreement relating to any Indebtedness or the Security.

3. **No Reliance.** Each Guarantor (a) warrants that he/she/it has not relied on any information about Borrower, the Security, or any other guarantor of the Indebtedness in providing its guaranty of the Indebtedness; (b) warrants that Guarantor has had ample opportunity to investigate Borrower, Borrower's affairs, the Security, and the effect that the Indebtedness will have on Borrower; and (c) agrees that Lender has no obligation to provide Guarantor any information about Borrower or the Security.

4. **Lender's Actions.** Without notice to or the consent of any Guarantor, Lender may do or refrain from doing anything affecting any Indebtedness or any Security, including, without limitation, the following: (a) granting or not granting any indulgences to anyone liable for payment of any Indebtedness or any Security; (b) failing to obtain or to perfect any Security; (c) failing to obtain an enforceable agreement to repay any Indebtedness; (d) releasing any Security or anyone or any property from liability for payment of any Indebtedness; (e) changing any agreement relating to any Indebtedness or any Security; (f) extending the time for payment of any Indebtedness; and (g) delaying in enforcing or failing to enforce any rights to payment of any Indebtedness or rights against any Security. Each Guarantor hereby waives all suretyship and other similar defenses.

**GENERAL PROVISIONS. 1. Application.** The following General Provisions apply to this entire Agreement including the promissory note, security agreement and guaranties.

2. **Powers and Authority.** Each Borrower and Guarantor represents and warrants that he/she/it has the power and authority to incur the obligations hereunder and to execute, deliver and perform this Agreement, and certify that each of their signatures hereto are genuine. The execution and delivery by Borrower and Guarantor of this Agreement will not contravene or violate any law or any contract to which Borrower or Guarantor are a party.

3. **Information to be Furnished.** Upon the request of Lender, Borrower and each Guarantor (when applicable) agree to furnish, or cause to be furnished, to Lender (a) annual financial statements in a form required by Lender setting forth the financial conditions and results of operation of Borrower and Guarantor within 60 days of the end of each calendar year; (b) copies of Borrower's and Guarantor's federal income tax returns within 30 days of their filing due dates; (c) annual financial statements of each Guarantor hereunder in the form required by Lender within 60 days after the end of each calendar year; and (d) such other financial information as Lender may from time to time reasonably request.

4. **Default Costs; Attorney Fees; Savings Clause.** Borrower agrees to pay to the order of Lender the following fees when incurred: (a) if any Indebtedness or portion thereof is not paid when due, Borrower agrees to pay Lender a late charge to compensate Lender for collecting and processing the late sum, such late charge being stipulated and liquidated at the greater of $.15 per dollar of such late sum or $15.00, plus an interest charge of 1.25% per month for every month after the first month in which the sum is late, (b) a returned check charge equal to the greater of $50.00 or the actual bank charges to Lender at the time the check is returned for any reason, including without limitation, nonsufficient or uncollected funds, (c) a collection call charge of $20.00 per call to compensate Lender for the time and expense of making any such call, (d) a personal visit charge of up to $750.00 to compensate Lender for the time and expense in making such visit, (e) other amounts allowed by applicable law, including without limitation, costs of foreclosure and of obtaining a judgment for money damages, (f) fees and costs of attorneys employed by Lender for any purpose related to this Agreement or the Indebtedness, including consultation, drafting documents, sending notices or instituting, prosecuting or defending any proceedings. Such proceedings include any arbitration, collection, bankruptcy, civil action, mediation, and counterclaim in which Lender prevails or post judgment action or appeal with respect to any of the foregoing. The fees and charges payable to Lender under this Section are in addition to such other interest, fees and charges that Lender may assess against Borrower pursuant to other provisions of this Agreement. Notwithstanding any provision in this Agreement to the contrary, the aggregate amount of all interest, fees, penalties, expenses and other charges payable by Borrower to Lender hereunder (collectively, "Costs") shall not exceed the maximum amount permitted under applicable law ("Maximum Rate"). If the aggregate amount of all Costs would otherwise exceed the Maximum Rate, such amounts shall be reduced, in a manner selected by Lender in its sole and absolute discretion, to equal in the aggregate the maximum amount permitted under applicable law and this Agreement shall be deemed reformed and modified to reflect such reduction. No party bound by this Agreement shall have an action or remedy against Lender for any damages whatsoever or any defense to the enforcement of this Agreement or other documents given in connection herewith arising out of the payment or collection of any interest in excess of the Maximum Rate. In determining whether interest paid or payable hereunder exceeds the Maximum Rate, Borrower agrees to exclude voluntary prepayment fees from the calculation of interest and to spread the total amount of interest throughout the entire contemplated Term.

5. **Events of Default.** The following shall be events of default hereunder ("Events of Default"): (a) failure to make any payment of the Indebtedness within 10 days after it first becomes due; (b) Borrower or any Guarantor defaults in the performance of any of their obligations or breaches any representation, covenant, or warranty under this Agreement or any other agreement with Lender or any affiliate of Lender; (c) the loss, theft, destruction, sale, assignment or unpermitted encumbrance of or on any Collateral; (d) attachment, execution or levy on any Collateral; (e) dissolution, termination of existence, insolvency, business failure, appointment of a receiver of any part of the property of Borrower or any Guarantor, assignment for the benefit of creditors by or the commencement of any proceedings under any bankruptcy or insolvency laws by or against Borrower or any Guarantor; (f) Borrower or any Guarantor dies, stops doing business as a going concern

Option 1 - Revised 04/02          Page 4 of 7          Please initial     N·O


Sky Financial Solutions

merges, consolidates, transfers all or substantially all of its assets to a third party or undergoes a substantial deterioration of financial condition; (g) an amendment or termination relating to a filed financing statement describing any of the Collateral is improperly filed by Borrower or Guarantor; or (h) Lender deems itself insecure for any other reason.

6. **Remedies on Default.** Upon the occurrence of an Event of Default, Lender may at its option, exercise one or more of the following remedies without notice or demand, except as required by law: (a) cease making additional advances under this Agreement; (b) declare all Indebtedness immediately due and payable; (c) charge interest at the Default Rate on all Indebtedness; (d) exercise all of Lender's rights and remedies as a secured party, including the right to enter any premises where the Collateral may be located without legal process and take possession of and remove the Collateral which, upon request of Lender, Borrower agrees to assemble and to make available at a place designated by Lender; (e) sell, lease or otherwise dispose of any Collateral at public or private sale and collect any deficiency balance with or without resorting to legal process; (f) exercise any other right or remedy available to Lender at law or in equity, including without limitation, the right of set-off. Lender has no obligation to clean up or otherwise prepare the Collateral for sale. Lender has no obligation to attempt to satisfy the Indebtedness by collection from any other person liable therefore and Lender may release, modify or waive any Security without affecting Lender's rights against Borrower or Guarantor, each of whom waive any right he/she/it may have to require Lender to pursue any third person for any of the Indebtedness. Lender may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be construed to adversely affect the commercial reasonableness of any sale of the Collateral. Lender may sell the Collateral without giving any warranties with respect thereto and may specifically disclaim any warranties of title or the like. This procedure will not be construed to adversely affect the commercial reasonableness of any sale of the Collateral. If Lender sells any of the Collateral on credit, Borrower will be credited only with payments actually made by the purchaser, received by Lender and applied to the indebtedness of the purchaser. If the purchaser fails to pay for the Collateral, Lender may resell the Collateral and the Indebtedness shall be credited with the proceeds of the sale. If Lender purchases any of the Collateral, Lender may pay for the Collateral by crediting some or all of the Indebtedness. Lender shall have no obligation to marshall any assets in favor of Borrower or against Borrower or in payment of this Agreement, any of the other Indebtedness or any other obligation owed to Lender by Borrower or any other person.

7. **Waivers.** No delay or omission by Lender in exercising any right or remedy hereunder shall impair any right or remedy, waive or operate as an acquiescence to the Event of Default or affect any subsequent default of the same or a different nature.

8. **Choice of Law, Jurisdiction; Venue.** This Agreement and all matters arising out of, resulting from or in any way connected with this Agreement, the Indebtedness, the Collateral, the Security and the relationship between Borrower, Guarantor and Lender shall be governed by, interpreted under and construed in accordance with the internal laws of the State of Ohio. Borrower and Guarantor shall select and consent to be subject to the personal jurisdiction of any state or federal court selected by Lender or its assignee and located in the State of Ohio or in any other state in which Lender or its assignee conducts business, so that trial shall be by and only to the court selected by Lender or its assignee.

9. **JURY WAIVER. BORROWER AND GUARANTOR EACH EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY AND THIS WAIVER IS A MATERIAL INDUCEMENT TO LENDER'S EXTENDING THE INDEBTEDNESS AND OTHER FINANCIAL ACCOMMODATIONS TO BORROWER.**

10. **Consent to Service of Process.** Borrower and Guarantor agree that any process served for any action or proceeding hereunder shall be valid if mailed by certified mail, return receipt requested, with delivery restricted to either the addressee, its registered agent or any agent appointed in writing to accept such process.

11. **Lender's Liability; Indemnity.** Lender shall not be liable to Borrower or any Guarantor for any indirect, consequential, punitive, or special damages of any kind or nature arising in connection with this Agreement, the Collateral, the Indebtedness or the Security. Borrower hereby agrees to indemnify, defend and hold Lender, its parent and affiliates, and its and their officers, directors, employees and agents harmless from and against all loss, liability and expense, including reasonable attorney's fees, of whatever kind and nature, imposed on, incurred by or asserted against Lender that in any way relate to or arise out of this Agreement, the consummation of the transactions contemplated hereby or the Collateral, including but not limited to (a) the selection, manufacture, purchase, acceptance or rejection of any item of Collateral or the ownership of the Collateral; (b) the delivery, lease, possession, maintenance, use, condition, return or operation of the Collateral; (c) payment of property, use, franchise or other taxes imposed on the Collateral when payment of said taxes is demanded or requested from Lender by any taxing authority; (d) any patent or copyright infringement; (e) the conduct of Borrower, its officers, employees and agents; and (f) a breach by Borrower of any of its covenants or obligations hereunder. This provision shall survive expiration or termination of this Agreement.

12. **Financial Statements; Credit Reports.** Financial information and other statements provided to Lender by credit application or otherwise are true, complete and correct, present fairly the financial position of Borrower and Guarantor as of their respective dates, and no material adverse change has occurred in the financial condition of Borrower or Guarantor since the furnishing of such information. Borrower and each Guarantor are currently meeting all of their debts as they come due. Borrower and each Guarantor authorize Lender to obtain, at Borrower and Guarantor's cost, and exchange with its affiliates and with non-Lender affiliates, credit reports or information contained therein, including consumer credit reports, in connection with this Agreement, and for periodic reviews, updates, renewals, extensions and collections.

13. **Life and Disability Insurance.** If required by Lender, Borrower shall obtain level premium term life insurance on the life Borrower for the Term in the face amount of the Principal Amount. Halfway through the Term, Borrower may request a decrease in the face value of the life insurance policy to the amount of the remaining payments under this Agreement. If required by Lender, Borrower shall obtain disability insurance on Borrower for the Term in the amount of 60% of the largest payment due hereunder. Lender shall be collaterally assigned under such policies. The benefits paid under such insurance policies shall be applied to the total of all payments due hereunder during the Term. Borrower appoints Lender as Borrower's attorney-in-fact to make any claim for, receive payment of or execute or endorse all documents, checks, drafts or returns of premium under such insurance. If Borrower fails to obtain and/or assign the insurance(s) required hereunder, in

Option 1 - Revised 04/02                Page 5 of 7                Please initial     N.O



addition to Lender's other remedies herein, Lender may obtain required insurance(s) on Borrower's behalf and as its agent. Lender may: (1) require Borrower to pay those premiums in full upon written demand by Lender to Borrower; (2) add the total amount of those premiums to the Principal Amount, or (3) add the amount of the premiums for obtaining and maintaining the required insurances to the Borrower's Monthly Payments. An administration fee of 10% will be added to the premium amounts charged under any policy of insurance obtained and maintained by Lender on Borrower's behalf.

14. **Binding Effect; Assignment; Execution.** This Agreement is binding upon and shall inure to the benefit of Borrower, Guarantor and Lender and each of their respective successors, heirs, personal representatives and permitted assigns, if any. Lender may rely upon an electronically authorized signature or consent by Internet or a facsimile signature telecopied to Lender by or on behalf of Borrower or any Guarantor as an authentic signature evidencing a binding and enforceable agreement. Borrower and Guarantor may not assign this Agreement. Lender may assign its rights and obligations under this Agreement at any time. Borrower agrees that the rights of Lender's assignee will not be subject to claims, defenses or setoffs that Borrower may have against Lender. Borrower will pay Lender's assignee hereunder regardless of any claims, defenses or setoffs that Borrower may have against Lender. Borrower agrees that Lender is not an agent of Lender's assignee and that Lender has no affiliation with such assignee except for such assignment.

15. **Disclaimer of Warranties.** Lender makes no warranty or representation, either express or implied, as to the value, design, condition, merchantability or fitness for a particular purpose or fitness for use of the Collateral or any other warranty or representation, express or implied, with respect thereto. In no event shall Lender be liable for any loss or damage in connection with or arising out of this Agreement, the Collateral or the existence, furnishing, functioning or Borrower's use of any item or products or services provided for in this Agreement.

16. **Miscellaneous.** The liability of each Borrower and each Guarantor is joint and several for the payment and performance of all of Borrower's obligations under this Agreement. Borrower and Guarantor agree that there are no other conditions or understandings which are not expressed in this Agreement. The declaration of invalidity of any provision of this Agreement shall not affect any part of the remainder of its provisions. Until Lender and Borrower notify each other of any new address in writing, any written communication is validly given when sent by facsimile transmission or when mailed postage prepaid by first class, overnight or certified mail to the address provided herein for such party. Lender's rights are cumulative and may be exercised together, separately, and in any order. Borrower agrees and covenants that it will, subsequent to the closing of Borrower's loan hereunder and disbursement of loan proceeds under this Agreement, complete and fulfill any uncompleted and unfulfilled terms, provisions or conditions contained in the Credit Conditions and Funding Requirements issued by Lender to Borrower, within any period of time prescribed by Lender.

17. **Prepayments and Partial Payments.** Borrower may not prepay the Indebtedness in whole or in part during the first 3 years of this Agreement. Thereafter, Borrower may prepay the Indebtedness in whole only by paying Lender an amount equal to: (a) the then outstanding Principal Amount, plus accrued interest computed on a simple interest basis and any other sums due Lender at the time of prepayment, plus (b) a prepayment premium equal to 4% of the original Principal Amount, if prepayment occurs in years four or five from the Acceptance Date, and 2% of the original Principal Amount if prepayment occurs after year five from the Acceptance Date. Borrower shall pay the prepayment premium due hereunder whether the prepayment is voluntary or involuntary.



Option 1 - Revised 04/02      Page 6 of 7      Please initial   N·O



## ASSET PURCHASE AUTHORIZATION & ACCEPTANCE

Borrower agrees that as of the Acceptance Date: (a) Borrower has received and inspected any Equipment purchased with the proceeds of this loan, (b) such Equipment is in good working order and complies with the purchase orders/contracts, (c) Borrower irrevocably accepts the Equipment for purposes of this loan "as-is, where-is, with all faults," and (d) Borrower unconditionally waives any right it may have to revoke its acceptance of the Equipment.

**MEDLINE/R.A.R.E.**

Please initial below if you also participate in Lender's Medline or R.A.R.E. program. By initialing in the space provided, Borrower acknowledges that it has received and reviewed the Revolving Line of Credit Agreement and/or Preferred Purchase Revolving Line of Credit Agreement and consents to and agrees to be bound by all terms and conditions thereof.

Please initial: _____

**Authorized Signature of Borrower(s):**

X _Nkemjika Obiechina_  Print Name: __Nkemijika Obiechina__  Date: _____
West 86th Street Dentistry, P.C. *Please sign in BLUE ink*

X _____  Print Name: _____  Date: _____

**Box 8 GUARANTOR(S)**
**Signature of Guarantor(s):**

X _Nkemijika Obiechina_  Print Name: __Nkemijika Obiechina__  Date: _____
Nkemijika Obiechina *Please sign in BLUE ink*

X _____  Print Name: _____  Date: _____

X _____  Print Name: _____  Date: _____

**Box 9**
This Agreement is not binding and effective until fulfillment of all conditions set forth in subsection 2 captioned "Conditions Precedent to Loan" under the Section captioned "PROMISSORY NOTE", final credit approval of Lender, and acceptance by Lender, its assignee or nominee at its Ohio office, by its signature below.

**ACCEPTANCE BY SKY BANK:**
Authorized Signature:

X _[signature]_  Agent  06-17-03
Sign Name and Title    Date

Option 1 - Revised 04/02         Page 7 of 7         Please initial _____